**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**WILLIAM S. COOPER** **PLAINTIFF**

**v.** **4:10CV01164-BRW**

**RELIANCE STANDARD LIFE INSURANCE COMPANY and POTLATCH CORPORATION LONG-TERM DISABILITY PLAN** **DEFENDANTS**

**ORDER**

Pending are Plaintiff's Motion for Summary Judgment (Doc. No. 7), and Defendants' Cross Motion for Summary Judgment (Doc. No. 10). For the reasons discussed below, I find that Plaintiff's Motion for Summary Judgment is, DENIED. Defendants' Cross Motion for Summary Judgment is GRANTED.

## I. BACKGROUND

Plaintiff William Cooper disputes the denial of long term disability ("LTD") benefits under the Employee Retirement Income Security Act ("ERISA").[1] Plaintiff worked for Potlatch Corporation ("Potlatch") from 1992 until July 2006, when he became disabled due to back problems.[2] While an employee of Potlatch, Plaintiff participated in the Clearwater Paper Corporation Group Long-Term Disability Plan (the "Plan").[3] The Plan was underwritten by Reliance Standard Life Insurance Company ("Reliance").[4] Matrix Absence Management, Inc. ("Matrix") served as claim administrator of the plan for Reliance.[5]

---

[1]Doc. No. 2.

[2]Doc. Nos. 2, 9.

[3]Doc. No. 9.

[4]*Id*.

[5]*Id*.

Plaintiff's physician Dr. Richard Peek certified that Plaintiff was disabled on July 24, 2006.[6] Dr. Peek later determined that Plaintiff suffered from degenerative disc disease. Plaintiff underwent surgeries in December 2006[7] and August 2007[8] to treat his condition. During this time, he was provided with Short Term Disability benefits, and later, when he was unable to return to work, he received LTD benefits.[9] The Plan allowed 18 months of LTD benefits without a determination that Plaintiff was unable to meet the requirements of his job due to total disability.[10] In March 2008, the Plan changed the definition of total disability to require that the person seeking benefits not be able to perform the tasks and duties of "any occupation."[11] In order to receive LTD benefits under the Plan, Plaintiff was required to apply for Social Security Disability ("SSD") benefits.[12]

Beginning in July 2006 and throughout treatment, Dr. Peek advised Matrix of Plaintiff's condition.[13] Plaintiff often complained of pain in his back and right leg that worsened with activity but improved after rest.[14] Dr. Peek also submitted numerous reports to Matrix that

---

[6]A.R. 218 (citations to "A.R." are to the administrative record submitted to the court). A laproscopic procedure to expose the L4-L5 anterior spine and insert a bone dowel was performed on December 4, 2006. *Id*. On December 11, 2006, a laminectomy was performed, and a portion of vertebral bone (the lamina) was removed. A.R. 79-90.

[7]A.R. 182. On August 20, 2007, Plaintiff underwent bilateral L4-L5 decompression and L4-L5 foraminotomy to relieve pressure on his spinal cord nerves. A.R. 194-195.

[8]A.R. 194-195.

[9]Doc. Nos. 9, 11.

[10]Doc. No. 11.

[11]Doc. No. 9.

[12]*Id*.

[13]Doc. Nos. 9, 11.

[14]Doc. No. 9.

described Plaintiff's limitations as being unable to bend, lift over ten pounds, twist, and to sit or stand for prolonged periods.[15] Until April 16, 2007, when Dr. Peek declared that Plaintiff was disabled indefinitely,[16] the reports provided various return to work dates which changed as Plaintiff continued to complain of pain.[17] Plaintiff was prescribed medication including OxyContin to treat his pain, given steroid injections to his spine, and participated in physical therapy.[18] In a report dated December 14, 2007, Dr. Peek informed Matrix that Plaintiff's ability to work would be impaired by the side-effects from his medications.[19]

On March 20, 2008, Plaintiff told Dr. Peek that he had been feeling better over the last three weeks, but still complained of pain after prolonged sitting and constant right leg pain.[20] The Social Security Administration ("SSA") approved his disability claim on March 24, 2008.[21] Marcia Adams, a Long Term Integrated Claim Examiner for Matrix, prepared a Medical/Vocation Review of Plaintiff's LTD claim on June 16, 2008, in which she questioned the vagueness of Dr. Peek's reports and his assessment of a permanent disability that would prevent Plaintiff from working any occupation.[22] She noted in her review that the limitations suggested by Dr. Peek would not prevent Plaintiff from sedentary work functions and

---

[15]*Id.*

[16]A.R. 209.

[17]Doc. No. 11. Dr. Peek's early reports appear to have been optimistic regarding Plaintiff's ability to return to work. After the December 2006 surgeries, Dr. Peek wrote that Plaintiff could return to work on February 19, 2007. A.R. 214.

[18]Doc. No. 9.

[19]A.R. 180.

[20]Doc. Nos. 9, 11.

[21]Doc. No. 9.

[22]A.R. 155-156.

recommended that Plaintiff receive an Independent Medical Evaluation ("IME").[23] On June 20, 2008, Dr. Peek reported that Plaintiff was "feeling a little better," but did not release him to return to work.[24]

The IME was performed by Dr. William Blankenship, an associate with OrthoArkansas Orthopedics and Sports Medicine.[25] The IME consisted of a review of Plaintiff's medical records and a personal examination.[26] Dr. Blankenship noted in his report to Matrix that it was difficult to determine the extent of Plaintiff's impairments without a functional capacity evaluation.[27] However, he also noted that Plaintiff's legs showed no atrophy which would be expected based on his complaints.[28] Dr. Blankenship's report stated, "[a]t this point there appears to be no objective basis why this man could not resume activities, clerical, which he states he was doing when he stopped working."[29] On March 9, 2009, Carol Vroman of Reliance prepared a Hypothetical Residual Employability Analysis for Plaintiff, indicating that he could work in a sedentary position and listed several occupation titles.[30] Matrix informed Plaintiff on March 13, 2009, that he was no longer eligible to receive LTD benefits as of February 21, 2009.[31]

---

[23]*Id*.

[24]A.R. 152.

[25]A.R. 140-145.

[26]*Id*.

[27]A.R. 140.

[28]A.R. 144.

[29]A.R. 144.

[30]A.R. 118-121.

[31]A.R. 113-116.

On May 12, 2009, a lumbar myelogram and CT scan were performed at St. Vincent Health System.[32] Both tests indicated that Plaintiff had mild degenerative disc disease in the lower lumbar spine, but no evidence of nerve root damage.[33] On June 23, 2009, Plaintiff notified Reliance that he would appeal the denial of LTD benefits.[34] Reliance Benefit Analyst Laura Quinn requested surveillance of Plaintiff.[35] A report by the surveillance operator, Research Consultant's Group, Inc., noted that Plaintiff was not seen outside of his residence or engaging in any activity.[36]

On October 2, 2009, Quinn informed Plaintiff that another IME would be performed to evaluate his condition.[37] Dr. Virendal Verma, of Rehab and Pain Management Clinic, performed the second IME on October 20, 2009.[38] As with the first IME, Dr. Verma reviewed Plaintiff's medical files and conducted a physical examination.[39] She determined that Plaintiff had chronic back pain syndrome, but would be able to perform sedentary work.[40] Sedentary work is defined as:

---

[32]A.R. 111-112.

[33]*Id*. The mylegram and CT scan also showed evidence of past fusions of the L4-L5 vertebrae, and mild bilateral neural foraminal stenosis, narrowing of the spinal column, at the L4-L5 vertebrae due to posterior disc osteophyte complex and facet hypertrophy. *Id*.

[34]Doc. No. 9.

[35]A.R. 50-53.

[36]*Id*.

[37]Doc. Nos. 9, 11.

[38]A.R. 31-37.

[39]A.R. 31.

[40]*Id*. Her physical examination indicated no spinal or paraspinal tenderness, but a limited ability to twist. *Id*. She diagnosed Plaintiff as having degenerative disk disease, degenerative joint disease, and lumbar spine fusion. *Id*.

> Exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently to lift, carry, push, pull, or otherwise move objections, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.[41]

The IME was reviewed by Marianne Lubrecht, RN, BSN, on November 6, 2009.[42] She also found that Plaintiff would be limited to sedentary work.[43] The review noted "[h]e is precluded from squatting, crawling, kneeling and ladder climbing . . . [but] [h]e is able to occasionally stand, walk, bend at the waist climb stairs, drive and use foot controls."[44] Reliance advised Plaintiff on January 12, 2010, that it was upholding the decision to terminate his benefits, finding that he was not precluded from working in a sedentary occupation.[45] The decision to uphold the denial of LTD benefits was based on information in Plaintiff's claim file including the reports by Dr. Peek, the two IMEs, the Residual Employability Analysis, and the SSD determination.[46]

Plaintiff filed this case on July 9, 2010, in Pulaski County Circuit Court. It was removed by Defendants on August 23, 2010.

---

[41]A.R. 120 (citing U.S. Department of Labor, Dictionary of Occupational Titles, 4t Edition (1991)).

[42]A.R. 28.

[43]*Id*.

[44]*Id*.

[45]Doc. Nos. 9, 11.

[46]*Id*.

## II. STANDARD

### A. Summary Judgment Standard

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds.[47] The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[48]

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues.[49] The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co*.:

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.[50]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.

---

[47] *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); FED. R. CIV. P. 56.

[48] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[49] *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979).

[50] 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted) (brackets in original).

**B. ERISA Standard**

An administrator's denial of benefits under an ERISA plan "is to be reviewed under a de novo standard unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[51] If the plan fiduciary has discretionary authority, then courts review a denial of a claim under a deferential standard.[52] Only a decision that is "arbitrary and capricious" can be overturned under a deferential review.[53] A plan administrator's decision will be upheld unless there is "substantial evidence, meaning more than a scintilla but less than a preponderance"[54] that the decision to deny benefits was arbitrary and capricious. But if the decision "is supported by a reasonable explanation, it will not be disturbed, even though a different reasonable interpretation could have been made."[55]

**III. DISCUSSION**

Plaintiff alleges that the denial of LTD benefits was arbitrary and capricious because Reliance lacked substantial evidence to determine that he was not totally disabled from working any occupation. He argues that Defendants failed to give proper consideration to the attending physician's reports or the SSA determination of total disability, and that a conflict of interest tainted Reliance's decision on Plaintiff's benefits. Defendants counter that the record shows that Plaintiff's condition has improved since June 24, 2006, when he was declared disabled by Dr. Peek, and that there is not sufficient evidence to show that he is totally disabled under the terms

---

[51]*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

[52]*Wakkinen v. UNUM Life Ins. Co.*, 531 F.3d 575, 580-581 (8th Cir. 2008).

[53]*Id*.

[54]*Midget v. Washington Group Intern. Long Term Disability Plan*, 561 F.3d 887, 897 (8th Cir. 2009) (quoting *Schatz v. Mut. Of Omaha Ins. Co.*, 220 F.3d 944, 949 (8th Cir. 2000)).

[55]*Cash v. Wal-Mart Group Health Plan*, 107 F.3d 637, 641 (8th Cir. 1997).

and definitions of the Plan. Neither party argues that Reliance lacked discretionary authority to deny Plan coverage, and it appears to be undisputed that the deferential standard is appropriate for analyzing Plaintiff's claims, and Reliance's decision will be upheld unless it was arbitrary and capricious.

**A. Change in Condition**

Defendants argue that the decision to deny LTD benefits beyond 18 months was reasonable because it was based on Reliance's determination that Plaintiff's condition had changed or improved enough to allow him to return to work in a sedentary capacity. The record shows that Plaintiff told Dr. Peek in March and June of 2008 that he was feeling better.[56] Dr. Peek's physical examination and review of x-rays from March 20, 2008, appear to show a change in Plaintiff's condition.[57] Plaintiff's gait and reflexes were normal; he had no instability; and his straight-leg raising test was negative for pain.[58] The x-rays of his spine showed that the fusion was progressing.[59] The physical exam on June 20, 2008, also revealed that Plaintiff's gait was normal and his straight-leg raising test was negative for pain.[60] Given Plaintiff's subjective complaints of leg pain, Dr. Blankenship was surprised to find no muscle atrophy when he performed the first IME in August 2008.[61] Dr. Blankenship could find no objective reason why Plaintiff could not work a sedentary job.[62] A CT scan and lumbar myleogram, completed nearly a

---

[56]A.R. 152, 162.

[57]A.R. 168

[58]*Id.*

[59]*Id.*

[60]A.R. 152.

[61]A.R. 144.

[62]*Id*.

year later in June 2009, found no evidence of nerve root damage.[63] During the second IME, in October 2009, Dr. Verma found no spinal or paraspinal tenderness in the lumbar region, and concluded that Plaintiff's physical limitations would not prevent him from working a sedentary job.[64] Thus there is substantial evidence that Reliance based its decision to deny LTD benefits on a reasonable assessment that Plaintiff's condition had improved enough for him to return to work in a sedentary occupation.

**B. Attending Physician's Determination**

In ERISA cases the Eighth Circuit has found that attending physicians are "not automatically entitled to special weight in disability determinations."[65] A claim administrator has discretion to give more credit to reviewing physicians over treating physicians, as long as there is a reasonable basis in fact for the denial.[66] Reliance based its decision to uphold its denial of benefits to Plaintiff based upon the information in his claim file.[67] This information included the reports and other documents submitted to Matrix and Reliance by Plaintiff's attending Physician Dr. Peek.[68] There is no evidence that Reliance totally ignored the attending physician's determinations. However, it does appear that Reliance questioned Dr. Peek's findings.[69] In Doctor Peek's May 18, 2009, letter to Reliance, he described plaintiff as "indefinitely disabled

---

[63]A.R. 112.

[64]A.R. 34-36.

[65]*Midgett*, 561 F.3d at 897.

[66]*Id*.

[67]Doc. No. 11.

[68]*Id*.

[69]*Id*.

from employment,"[70] with a loss of "70 [percent] of his lumbar motion, flexion, extension and lateral deviation."[71] Dr. Peek did not cite any medical tests to support this assessment. Dr. Peek found that Plaintiff could only sit for half an hour to an hour at a time, and frequently had to lay down.[72] Again he provided no support for this conclusion. The record suggest that Plaintiff could perform sedentary work. The straight-leg raising tests in March and June 2008 were both negative for pain, and Dr. Peek reported that Plaintiff's gait and reflexes were normal.[73] The May 2009 CT scan and lumbar myleogram did not reveal nerve root damage.[74] Aside from Dr. Peek's conclusion on Plaintiff's ability to sit, much of the information provided by the doctor to Reliance and Matrix was consistent with an assessment that Plaintiff could perform sedentary work. In a Physical Capacities Questionnaire, Dr. Peek indicated that Plaintiff could occasionally sit, stand, walk, squat at the knees, climb stairs, drive, perform simple grasping, reach above mid chest, reach at waist/desk level, and perform fine manipulation.[75] The questionnaire did not note any other factors such as the pain medication that would effect his physical abilities.[76]

Additionally, there are some inconsistencies in Dr. Peek's reports. In the May 28, 2009, letter he claimed that Plaintiff could not drive because of the side effects of his medications. However, earlier reports did not support this conclusion, and Dr. Peek wrote in one report that

---

[70]A.R. 109.

[71]*Id*.

[72]*Id.* Occasionally is defined as 33 percent or less of an average eight-hour workday. A.R. 149.

[73]A.R. 152, 168.

[74]A.R. 112.

[75]A.R. 149.

[76]A.R. 149-50.

Plaintiff could drive up to 33 percent of the time in an average eight hour work day.[77] Moreover, there is only one subjective complaint from Plaintiff related to the pain medication side effects in the record.[78] There is nothing in the record that shows Dr. Peek tested Plaintiff's cognitive abilities to develop objective evidence about the side effects of Plaintiff's pain medication. Additionally, Dr. Peek did not provide a response when asked to describe "other factors affecting [Plaintiff's] physical abilities."[79]

Thus the claim administrator's decision to deny Plaintiff's LTD benefits cannot be arbitrary and capricious based on any failure to take into consideration the information provided by Dr. Peek. Reliance could reasonably give less weight to the attending physician's medical opinion, because many of Dr. Peek's reports were conclusory and did not provide sufficient objective facts to support his finding of total disability.

**C. SSA Determination**

Plaintiff argues that Reliance also ignored the SSA determination that Plaintiff was totally disabled. The Eighth Circuit has found that an SSA determination can be evidence that the insured is totally disabled.[80] The Sixth Circuit uses a three part test for examining a plan denial that conflicts with an SSA determination:

> [i]f the plan administrator (1) encourages the applicant to apply for Social Security disability payments; (2) financially benefits from the applicant's receipt of Social Security; and then (3) fails to explain why it is taking a position different from the

[77]A.R. 149.

[78]A.R. 180.

[79]A.R. 150.

[80]*Riedl v. General Am. Life Ins. Co.*, 248 F.3d 753, 759 n.4 (8th Cir. 2001).

> SSA on the question of disability, the reviewing court should weigh this in favor of a finding that the decision was arbitrary and capricious.[81]

However, ERISA plan administrators are not bound by the SSA determination.[82]

In analyzing the facts of Plaintiff's case under the Sixth Circuit's three part test, it is clear that Reliance required Plaintiff to apply for social security, and it benefitted by recouping payments it made to Plaintiff after the SSA granted him disability benefits.[83] However, Reliance does explain why its decision was different than that of the SSA. The January 12, 2010, letter from Reliance to Plaintiff notes that the results of the IMEs as well as other vocational and medical information considered by Reliance were different than the information used by the SSA when it made its determination.[84] Despite the explanation, I still find that the SSA determination is evidence of Plaintiff's disability. Although it appears to be weakened considerably by the explanation offered by Reliance, and alone it is not enough to prove that the denial of LTD benefits was the result of an arbitrary and capricious decision.

**D. Conflict of Interest**

The Supreme Court held in *Glenn* that there is an inherent conflict of interest when a defendant is responsible for determining eligibility for benefits and paying for those benefits.[85] The conflict of interest is to be considered as a tiebreaker when the other factors are closely balanced.[86] Defendants argue that Plaintiff must also show a conflict of interest through

---

[81]*DeLisle v. Sun Life Assurance Co. of Canada*, 558 F. 3d 440, 446 (6th Cir. 2009) (citing *Bennett v. Kemper Nat'l Servs*., 514 F.3d 547, 554 (6th Cir. 2008)).

[82]*Duffie v. Deere & Co*., 111 F. 3d 70, 74 n.5 (8th Cir. 1997).

[83]A.R. 234-245.

[84]A.R. 26.

[85]*Metropolitan Life Ins. Co. v. Glenn*, 544 U.S. 105. 117 (2008).

[86]*Id*., see also *Wakkinen*, 531 F.3d at 582.

"material, probative evidence demonstrating that (1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty."[87] The Eighth Circuit recognized in *Wakkinen* that the additional test for conflict of interest in *Woo* was abrogated by *Glenn*, so the assertion that more facts are needed to even consider the conflict of interest is incorrect.[88] But it does not appear that the assumption of a conflict of interest should be a factor in this case, because the other factors are not closely balanced. As noted above, Reliance was reasonable when it concluded that Plaintiff's condition changed so that he could work a sedentary job, and this determination is supported by substantial evidence. In addition, it was reasonable for Reliance to give more weight to the IMEs and other information than to Dr. Peek's conclusions, because many of those conclusions were not supported by objective facts. The SSA determination is probative of the issue of Plaintiff's condition, but it is not enough to balance the factors, because it was reasonable for Reliance not to defer to the SSA determination, given the new information that was developed by Reliance after the SSD benefits were awarded. Thus I do not think that a conflict of interest is needed to break a tie in this case.

However, even if I assume there was a conflict of interest, there is nothing in the record to indicate that Reliance's decision was arbitrary and capricious. Reliance paid Plaintiff's LTD benefits for seven months after he was no longer eligible while it reviewed his claim. The company also conducted two IMEs, both of which involved physical examinations of Plaintiff.[89]

---

[87]*Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir.1998).

[88]See *Wakkinen*, 531 F.3d at 581-82 (finding that post-*Glen* the conflict may be assumed).

[89]Brief in Support of Defendants' Motion for Summary Judgment, Doc. No. 12. *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 292 (6th Cir. 2005) (finding that lack of a physical exam might raise questions about accuracy of determination), *Fought v. UNUM Life Ins. Co. of Am.*, 379 F.3d 997, 1015 (10th Cir. 2004) (finding that independent evaluations promote ERISA purposes by

Additionally, Plaintiff has not shown any procedural irregularities that would suggests that the conflict of interest led to an arbitrary and capricious decision.

**CONCLUSION**

The law dictates that if the Plan offers a reasonable explanation for its decision then a denial should stand "even though a different reasonable interpretation could be made."[90] Reliance offered a reasonable explanation, and to arrive at a different interpretation in this case would require me to assume facts that are not in the record and to ignore other facts. There are no material facts in dispute, and summary judgment for Defendants is appropriate. Plaintiff failed to show that he was totally disabled from any occupation under the terms and definitions of the Plan, and that the decision to deny benefits was arbitrary and capricious. Moreover, Defendants reasonably denied Plaintiff's LTD benefits, because the objective facts pointed to a change in Plaintiff's condition that would allow him to return to work in a sedentary capacity. Plaintiff's Motion for Summary Judgment (Doc. No. 7) is DENIED, and Defendants' Cross Motion for Summary Judgment (Doc. No. 10) is GRANTED.

IT IS SO ORDERED this 22nd day of March, 2011.

/s/Billy Roy Wilson
UNITED STATES DISTRICT JUDGE

---

limiting conflicts of interest), *Hightshue v. AIG Life Ins. Co.*, 135 F.3d 1144, 1148 (7th Cir. 1998) ("Seeking independent expert advise is evidence of a thorough investigation.").

[90]*Midgett v. Washington Group Intern. Long Term Disability Plan,* 561 F.3d 887, 897 (8th Cir. 2009).